UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

MISC BERHAD f/k/a MALAYSIA
INTERNATIONAL SHIPPING
CORPORATION BERHAD

    Plaintiff,

vs.                                                       CASE NO.:

WORLD FUEL SERVICES CORPORATION

    Defendant.
_____/

## **COMPLAINT**
Rule 9(h)

    Plaintiff, MISC BERHARD f/k/a MALAYSIA INTERNATIONAL SHIPPING CORPORATION BERHAD, (MISC) by and through its counsel, and for its Complaint against the Defendant, WORLD FUEL SERVICES CORPORATION, (WFS) alleges as follows:

    1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is proper under 28 United States Code § 1333 in that this matter involves a maritime claim. Alternatively, the Court has jurisdiction under 28 United States Code § 1332 in that it involves citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. Venue is appropriate under 28 U.S.C. § 1391(b)(2) and pursuant to the forum selection clause of WFS's general terms and conditions which is attached as Exhibit "A".

    2.     At all material times, Plaintiff, MISC, was and is a foreign corporation

organized and operating pursuant to the laws of a foreign country, and was the charterer of the *M/V OOCL China*, an ocean going container vessel.

3. WFS is a Florida Corporation with its principal place of business at 9800 N.W. 41st Street, Suite 400, Miami, Florida, and is in the business of brokering the supply of bunkers and marine fuels to vessels operating throughout the world and including the territorial waters of the United States.

4. On or about May 20, 2005, MISC entered into a New York Produce Exchange Form charter party whereby it agreed to charter the *M/V OOCL China* from her disponent owners, Orient Overseas Containers Lines Limited (OOCL) for a period of three years. Under the terms of the charter party MISC agreed to provide and pay for all marine fuels (bunkers) to be consumed by the vessel during the term of the charter. The charter provides in material part at Clause 31:

> BUNKER QUALITY CONTROL
>
> (a) The Charterer shall supply bunkers of a quality suitable for burning in the Vessel's engines and auxiliaries and which conform to the specification(s) mutually agreed under this Charter.
>
> * * *
>
> (c) During the currency of the Charter, the Charterers shall ensure that bunker delivery notes are presented to the Vessel on the delivery of fuel(s) and that during bunkering representative samples of the fuel(s) supplied shall be taken at the Vessel's bunkering manifold and sealed in the presence of competent representatives of the Charterers and the Vessel.
>
> (d) The Owners reserve their right to make a claim against the Charterers for any damage to the main engines or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed specification(s). * * *

5.     On April 28, 2007, at the request of MISC, WFS through its agent, WESTPORT PETROLEUM, INC., delivered to the *OOCL China* 3003.27 metric tons RMH 500 fuel in New York. Attached is WESTPORT delivery receipt, Exhibit "B". Four samples were taken by the ship's crew at the ship's receiving manifold. Two samples were issued by the supplier to the vessel and the delivering barge retained two samples. The New York bunkers were loaded into the vessel's Tanks 3P, 3S, 6P, and 6S. These tanks did contain small amounts of previous bunkers. The fuel in these tanks before the New York supplied bunkers were supplied by MISC at Singapore on March 27, 2007. These bunkers had been burned and it caused no problems whatsoever. On departure from New York, there was 4,558.9 tons of heavy fuel on board. Approximately 3,000 tons was the New York supplied fuel.

6.     One of the Vessel's retained samples (Seal No. 1252484) was sent to DNV for a test report. DNV issued a report on May 2, 2007, concluding that based on routine testing methods only, the sample quality met with ISO specification, Grade RMK380. However, DNV advised that, although the fuel was within specification, the total sediment potential was high, which could result in an increase in sludge during purification. DNV recommended to run three purifiers in parallel and increase the de-sludge interval if necessary. The vessel burnt its previously stemmed bunkers before switching to the New York supplied bunkers. By May 10, 2007, only the fuel loaded at New York was on board. On May 11, 2007, the first engine problem arose and continued over the following days. Fuel pump components were seizing, which resulted in auto slowdown of the engine. The

master also reported that the New York supplied fuel had a "special smell" and the auto back flush filter was operating more frequently. The New York supplied bunkers were being burnt in the correct manner and in accordance with the advice provided by DNV.

7.  Testing of fuel samples and fuel pump deposits showed that the New York supplied fuel was contaminated with products that are not related to the production of fuel for refining petroleum. This fuel was therefore not compliant with ISO 8217, in particular, Clause 5.0, and was not suitable for use in the engines of the *M/V OOCL China*. When this fuel was consumed, the fuel pumps of the main engine and auxiliary engines seized due to deposit formation on the pump barrels, plungers, and suction valves, resulting in loss of power to the engines. The New York supplied fuel also had a very bad smell which could have been harmful to the ship's crew and would again be in non-compliance with ISO 8217, Clause 5.0.

8.  According to ISO standards, fuel should not include any added substance or chemical waste which adversely affects the performance of the machinery. OOCL contracted with DNV Petroleum Services to test the fuel delivered on April 28, 2007. According to DNV Petroleum Services Fuel Quality Report, the subject fuel was found to contain two harmful substances, Alkyl Phenol and Butyl Acrylete. These substances caused various damages to the vessel's engine and auxiliary parts.

9.  As a result of the engine problems created by the off-spec bunkers, the *M/V OOCL China* ceased the use of these bunkers. Subsequently, the New York supplied bunkers were discharged at Shanghai on April 28, 2008. Because the New York supplied

off-spec bunkers could not be utilized by the vessel, MISC had to replace those bunkers. The replacement bunkers were delivered to the *M/V OOCL China* at Singapore on May 25, 2007. None of the New York supplied bunkers were used by the *M/V OOCL China* after the vessel departed Singapore in May of 2007. After arriving Singapore, the vessel had on board 1327 MT of the New York supplied bunkers. The costs of replacement bunkers was $335.00 per MT - $444,545.00.

10. By e-mail dated June 20, 2007, MISC gave WFS notice and reserved all rights and claims, arising from the provision of off-spec bunkers including but not limited to claims for any damage to the main engine and auxiliaries caused by the use of the unsuitable fuels, cost of cleaning the tanks which hold the fuels and any personal injury claims by any person who was exposed to the fuel. WFS acknowledged receipt the same day. See Exhibit "C" attached.

## COUNT I
## BREACH OF CONTRACT

Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 10, and further states:

11. WFS is liable to MISC for breach of contract for failure to supply sound bunkers in that the bunkers supplied were contaminated by Alkyl Phenol and Butyl Acrylate, and the bunkers were not fit for use on the vessel, *OOCL China*.

12. Plaintiff paid WFS good and valuable consideration for delivery of said bunkers in the sum of $432,602.00, and WFS materially breached the contract by delivering

off-spec bunkers, causing Plaintiff damage and loss.

WHEREFORE, Plaintiff requests entry of Judgment against Defendant for the aforesaid damages, plus pre- and post-Judgment interest, costs, and attorney's fees, and for such other and further relief as is deemed just and proper.

## COUNT II
## INDEMNITY

Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 10, and further states:

13. That as a result of the delivery of the off-spec bunkers, OOCL instituted arbitration proceedings in London against Plaintiff seeking damages arising from the off-spec bunkers which caused damage to the *M/V OOCL China's* engine, pumps, etc.

14. That as a result of those arbitration proceedings, settlement was entered into between OOCL and Plaintiff in the sum of $220,000.00, on or about October 18, 2011, which was paid by Plaintiff on November 7, 2011.

15. That the settlement was fair and reasonable.

16. That Plaintiff was compelled to settle the OOCL's claim because the damages sustained by the *M/V OOCL China* were occasioned solely by the fault and neglect of WFS and its agents, and is not attributable at all to the Plaintiff. Accordingly, Plaintiff is entitled to be indemnified by WFS with respect to the $220,000.00 settlement, including its legal fees and expenses.

17. Plaintiff has performed all duties and obligations on its part to be performed.

*MISC Berhad etc., v. World Fuel Services Corp.*
*Page 7*

WHEREFORE, Plaintiff requests entry of Judgment against Defendant for the aforesaid damages, plus pre- and post-Judgment interest, costs, and attorney's fees, and for such other and further relief as is deemed just and proper.

Dated: March 29, 2012

        Respectfully submitted,
        HAYDEN, MILLIKEN & BOERINGER, P.A.
        Attorneys for MISC BERHAD f/k/a MALAYSIA INTERNATIONAL SHIPPING CORPORATION BERHAD
        2121 Ponce de Leon Boulevard - Suite 730
        Miami, FL. 33134
        PH: 305.662.1523
        FAX: 305.779.1358

By: _____
        WILLIAM B. MILLIKEN
        Fla. Bar No.: 143193

H:\18523\MALAYSIA v. WORLD FUEL et al\Complaint.wpd